LOTTINGER, Judge.
This is a suit ex delicto, for damages as the result of an injury received by the plaintiff when he was attempting to repair an air conditioning unit in the automobile of the defendant. From a judgment in favor of the defendants, the plaintiff has perfected this appeal.
The record points out that on October 11, 1967, the plaintiff was employed as an' automotive mechanic at Robinson Brothers, a Lincoln Mercury dealer in the City of Baton Rouge. On this date, the defendant drove his car into the Robinson Brothers repair shop for the express purpose of having a defect in his air conditioning unit of his automobile corrected. The defendant spoke with the assistant shop foreman as to having the defect corrected. The assistant shop foreman requested the plaintiff to examine the defendant’s automobile to determine the problem. The hood of the automobile was raised, which hood is hinged at the front, as compared to the conventional hinging at the rear.
In explaining what happened, the plaintiff testified as follows, to-wit:
“Well, I went over there and I told him (Jack Hamilton, defendant) to start the car so he started it and when it started the belt was smoking and it was burning the clutch where it wasn’t turning, the motor was running but the belt wasn’t turning, the compressor was froze plum up. The belt was smoking it was so hot so I told him to cut it off and he cut it off and I looked around and looked to see what was — I seen how the belt was, the condition, and if the generator belt was loose because of the fact that if the generator belt is loose, well, it won’t pull the compressor due to the fact that the generator and water pump pulls the compressor on a Lincoln and so they were tight, I mean, you know, they were *728 tight, I mean I looked at them and yon could see the condition enough to know it because they got two belts on the generator and I could see the condition that it was all right, and the belt, well, it was burning, the belt was burning on that compressor, I could see that well enough, and so I told him to shut it off, so he cut it off and then I jumped up on the fender there and looked around when he cut it off and—
“Q. What do you mean you jumped up on the fender?
“A. Well, I just, you know, raised and lifted up there. I am so short I climb on the fender all the time and look, the fender is wide, you can’t see over it, and I do that all the time, and so I couldn’t see nothing and I was just looking for something and when I went to feel of the belt and when I put my finger there he kicked the starter and it went and grabbed my finger and the motor just started to start after I looked around and it was about three minutes there or some hesitation there I put my finger in that belt to feel how tight it was, you see, and see if it was loose or the compressor was froze up and when I did he hit the starter and the motor didn’t crank and my fingers came out and I thought they were cut right off, they were just riddled to pieces and I took a rag and grabbed them and I went to the office where Mr. Jack was and told him, “I think I cut my fingers off,’ and he says, ‘Well, get somebody to bring you to the doctor,’ so Mr. Lewis or somebody, I was so excited I didn’t know what was going on and Mr. Lewis or somebody went and got Spence to bring me to the doctor, so — ”
The plaintiff testified that between the time that the motor initially was turned off and the time that it was restarted at which time his fingers were caught in the fan belt, took approximately three or four minutes. He further testified that he never told Mr. Hamilton to restart the motor.
The defendant, Mr. Hamilton, testified as follows as to how the accident happened :
“I got in, attempted to start my motor and when I hit my starter the motor turned over in response and I felt that it was trying to fire and I released my hand off the starter key and naturally it went dead because the compressor was frozen, then I reached back real quick and turned it right back on which I would say entailed a separation of my hand from the starter and off of it one breath.”
The defendant testified that he never did hear Mr. Bollinger tell him not to start the motor after it had initially stopped.
Clarence Lewis, the assistant shop foreman, at one point testified that there was a lapse of approximately 30 to 40 seconds between the time the motor initially stopped and it was restarted by the defendant. On another occasion in his testimony he stated that the time lapse was from 8 to 12 seconds. He further testified that the plaintiff did tell the defendant not to start the motor again, but Mr. Lewis did state that there was a lot of noise in the shop, and Mr. Hamilton might not have heard the plaintiff tell him not to start the motor after it had stopped. The plaintiff testified that the fan belt going to the air conditioning compressor was very tight, slipping, and smoking, whereas Mr. Lewis testified that the belt was loose, slipping and not smoking.
Without question, there is much conflict in the testimony as to actually how the accident happened. When the defendant took his automobile into the service department of Robinson Brothers, he took it there with the express purpose of having it repaired. He was placing his automobile into the hands of the service department for repair. Therefore, in a sense, the service department had control over this vehicle. Though no repair ticket was made, the defendant did acquiesce in the plaintiff’s examining his automobile.
*729 We are of the opinion that the plaintiff has failed to prove any negligence on the part of the defendant. As the mechanic who was to inspect the defendant’s automobile, the plaintiff was the one who was giving out instructions as to what should be done. Without question, he told the defendant to initially start the motor on the car. There is certainly much question as to whether he told the defendant not to restart the engine when it initially died. Considering the testimony of all of the witnesses, and in particular the fact that there was much noise in this area, we do not find that the defendant was negligent in restarting the engine once it had stopped. The defendant testified that he did not hear the plaintiff’s request to not restart the engine, and the possibility of this occurring is concurred in by the assistant shop foreman. We find no manifest error in the Lower Court.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed, all costs of this appeal are to be paid by the plaintiff-appellant.
Judgment affirmed.